IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARREN HAMILTON,   CIVIL DIVISION

   Plaintiff,   Case No. 1:21-cv-87

v.

COMPOSIFLEX, INC.,

   Defendant.

## COMPLAINT AND JURY DEMAND

A. ***Preliminary Statement***

1. The plaintiff Darren Hamilton brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of his right to be free from employment discrimination, harassment and retaliation based upon his wife's race. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* A jury trial is demanded.

B. ***Jurisdiction***

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3. On or about October 10, 2020, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2021-00017. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4. The EEOC issued a Notice of Right to Sue dated February 18, 2021.

5. This Complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C. *__The parties__*

6. The plaintiff is an adult individual who resides at 7891 Pagan North Road, Erie, PA 16509 (Erie County).

7. The defendant Composiflex, Inc. ("Composiflex" or "the company") is an entity doing business in the Commonwealth of Pennsylvania. At all times material, the defendant had a place of business located at within this district, specifically 8100 Hawthorne Drive, Erie PA 16509 (Erie County).

8. The defendant is a designer and manufacturer of advanced, high-performance composites for use in several markets, including the aerospace, medical, communication and radar, and military and defense industries.

9. At all times material, the defendant employed more than fifteen employees.

10. The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

D. *__Factual Background__*

11. The plaintiff started working for Composiflex in May 2018 as a temporary worker and was hired as a full time employee on August 20, 2018. His employment was terminated by the company on August 24, 2020.

12. The plaintiff was first employed as a shipping clerk and, in approximately November 2019, was moved to the position of inventory clerk. As a shipping clerk, his responsibilities included using the ink jet machine to tag parts, build pallets/crates and package

the company's products.  As an inventory clerk, his responsibilities included managing inventory and keeping track of and handing out tools and parts needed for various jobs.

13. The plaintiff performed all of the functions of his job in a competent fashion and was a good worker.

14. While the plaintiff was still a temporary employee in shipping, Michael Taylor, shipping lead, and Gene Kutruff, production manager, told the plaintiff that he was picking up the duties of the job very quickly and was "busting his ass".  They told him that he could expect "big things working here".

15. In July 2018, shortly before he was hired on as an employee of the company, Taylor and Kuttruff told the plaintiff that he was going to be trained to take over as shipping lead upon Taylor's retirement.  At the time, Taylor was 68 years old and was thinking about retiring within the next year or so.

16. The plaintiff continued to do well in his position in shipping throughout the summer of 2018 into the fall.

17. One day in October 2018, the plaintiff forgot his keys and his wife, Chaztina Hamilton (African American) brought them to him at work.  She came to the back door and gave the plaintiff his keys.  He thanked her, gave her a kiss on the cheek and told her good bye.  Taylor was present and asked the plaintiff, "Who was that?"  The plaintiff told Taylor that she is his wife.  Taylor seemed a little surprised and said, "Why did you marry a colored girl?"

18. About a month later, in November 2018, the plaintiff and his wife were eating lunch in the their vehicle in the company parking lot.  Nick Heshke, operation manager, walked by and gave them a dirty look.  After finishing lunch and seeing his wife off, the plaintiff went back in the building.  Heshke said, "was that your wife?" and when the plaintiff said yes, Heshke

3

asked, "why did you marry a colored woman?" The plaintiff responded, "I don't see color". Heshke said, "oh, I didn't know that" and he walked away.

19. After this, the plaintiff noticed that managers and office employees started treating him differently and started making racially based comments to him and/or in his presence. Some examples follow:

(a) Kutruff started making racist jokes and remarks, something he had never done in the plaintiff's presence in the past.

(b) On one occasion, Kutruff was having a conversation with one of the company's salespersons who lived in a racially mixed community. Kutruff told the salesman that he had just bought a gun and that he would be happy to go to the salesman's neighborhood and do some "coon hunting".

(c) On one occasion, Taylor was having a conversation with the plaintiff about race issues. Taylor said, "Why is it okay for black people to say 'nigger' but I can't?" He also brought up the Black Lives Matter movement in disparaging ways and made ignorant observations and statements about black culture and history

(d) On one occasion, the plaintiff brought in cinnamon monkey bread for everyone to eat. He told Taylor and Heshke that his wife had made it front scratch. Heshke said, "Of course she can" implying that she could do so because she's black. Taylor said, "That's nigger bread".

(e) Taylor often made comments about the food that the plaintiff and his wife ate, asking if the plaintiff made a lot of chicken and collared greens and, when talking about pork, he asked if they ate chitlins.

(f) Kutruff made comments that the plaintiff and his wife live in a low-income neighborhood and that the plaintiff's wife must have lived in a low-income neighborhood prior to getting married. The plaintiff would correct him, pointing out that, actually, his wife's family was affluent and that she had traveled around the world. Kutruff brought it up again and again.

(g) Managers and other employees often talked about the NFL football players "taking the knee" during the playing of the national anthem. They repeatedly commented that the black players "should just shut the fuck up".

4

(h) Managers and other employees also talked about basketball, saying things like "them monkeys [referring to black players] can run, jump and steal; they're perfect for basketball!"

(i) After finding out that the plaintiff's wife is black, Heshke started making harsh and derogatory comments about the way the plaintiff did his job and subjected him to heightened scrutiny.

20. The plaintiff was offended by these comments and knew that they were directed at him because of his wife's race. However, he wanted to keep his job, get the promotion that had been discussed, and to continue to do his best to impress his managers with his abilities, so he just bit his tongue.

21. In December 2018, Taylor was off work due to a surgery and the plaintiff took over the shipping in his absence. He did an excellent job during the month that Taylor was gone and did not make any shipping errors. In January 2019, after Taylor's return, the plaintiff approached Heshke's office and asked how he could continue to improve as an employee. Heshke said to show more confidence. The plaintiff asked if that was all he needed to do and Heshke said "yeah". At first, the plaintiff thought that Heshke was offering this as constructive advice, but the plaintiff later realized that Heshke would say anything to justify not promoting the plaintiff.

22. Taylor was impressed with the work that the plaintiff had done during his absence. Shortly after his return in January, Taylor told the plaintiff, "You did a great job. I think it's time to finish teaching you the rest of shipping."

23. Over the ensuing weeks, Taylor trained the plaintiff and, at the end, he told Heshke and Kuttruff that the plaintiff was ready to be the shipping lead.

24. The shipping lead position opened in February 2019. Instead of promoting the plaintiff, the position was given to Chris Costello. Costello had no shipping experience and the

plaintiff was told that he had to train Costello on how to do the job. The plaintiff spoke to Heshke and asked why he didn't get the promotion. Heshke said that it was because the plaintiff is "arrogant and not humble". Heshke said that he and Michael Chessley, president of Composiflex, were the ones who made the decision.

25. Near the end of October 2019, the shipping lead position opened again because Costello was moved to customer service. Mike Miller was given the position instead of the plaintiff. Like Costello before him, Miller did not have the necessary experience to do the job and the plaintiff again was required to train Miller.

26. The plaintiff was frustrated that he again had to train someone with no experience to do the job that he was most qualified for. Heshke told the plaintiff, "If you don't want to be a team player [by training Miller], you will be asked to leave". The plaintiff had a second conversation with Heshke during which he pointed out that he had more experience at the position than Miller did. Heshke shrugged the plaintiff off and said that Miller "was a better fit". The plaintiff asked how Miller could be a better fit. Heshke snapped "Mike [Chessley] and I made the decision; don't question it".

27. In November 2019, the plaintiff was moved to inventory and shipping; this was a lateral move, not a promotion. The plaintiff quickly learned all of the functions of the job and was very proficient.

28. In late February/early March 2020, the lead position opened and the plaintiff expressed his interest in getting the promotion. Heshke pulled Costello out of customer service and made him the lead instead of the plaintiff. Heshke told the plaintiff that he had to train Costello to do the job.

29. In April 2020, the plaintiff sent an email to Chessley, raising issues about how he was being treated by his managers, specifically Heshke, and how he felt that he was being discriminated against. In the email, the plaintiff pointed out that he got passed over for promotions on multiple occasions and had to train the individuals who got the jobs because they did not have any experience to act as lead. The plaintiff also pointed out that everything seemed to change after it became known in the workplace that his wife is black.

30. Chessley called the plaintiff into his office the next day. Heshke was present during the meeting. Instead of addressing the plaintiff's concerns, Chessley gave him the run around. He kept saying "We're not a racist company", to which the plaintiff responded, "Why then did I get passed over every time there was a promotion?" Chessley said that a new position might be opening soon and vaguely promised that he might be considered for that.

31. After this meeting, Heshke's harsh treatment of the plaintiff intensified and got worse. He continued to subject him to heightened scrutiny. Other managers started doing the same thing.

32. Toward the end of April 2020, the plaintiff started experiencing physical problems and got testing done. All the tests came back fine and the plaintiff's physician felt that the physical symptoms were the result of anxiety due to the plaintiff's work situation. His physician prescribed an antidepressant referred him to a therapist for additional treatment.

33. In June 2020, the plaintiff's therapist thought it would be a good idea to take some time off of work to see if that would lessen his symptoms of anxiety and the physical problems that he was experiencing.

34. The plaintiff put in for FMLA time and was off of work from June 22 to August 21.

35. The plaintiff reported to work on August 24. As soon as he arrived, he was called into the inventory and was told by Costello and Kutruff that he was being laid off due to lack of work. They rushed the plaintiff through the termination process and made him fill out paperwork without giving him a chance to review what he was required to sign. The plaintiff signed the documentation and left.

36. The reason given for the plaintiff's termination was nothing more than a pretext and the real reason that he was fired was because of his wife's race. Further, the plaintiff was terminated in retaliation for raising the issue of his discriminatory treatment with Chessley.

## FIRST CAUSE OF ACTION

37. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

38. The plaintiff i is protected against discrimination, harassment and retaliation on the basis of his wife's race pursuant to Title VII.

39. The plaintiff was qualified for his position.

40. Despite his qualifications, the plaintiff was terminated. The reasons given for his discharge were a pretext.

41. The defendant's discharge of the plaintiff was because of his wife's race in violation of Title VII.

42. Further, the defendant created, fostered and maintained a hostile work environment based on the plaintiff's wife's race.

43. The defendant failed and refused to take action when the plaintiff went to management and complained about the hostile work environment and the discriminatory treatment to which he was subjected.

44. The defendant retaliated against the plaintiff for raising these issues.

45. The defendant's violation of Title VII was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of race discrimination.

## SECOND CAUSE OF ACTION

46. The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

47. As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from discrimination and harassment under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*

WHEREFORE, the plaintiff respectfully requests judgment be entered in his favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII and the PHRA, including attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*

Michael J. Bruzzese
Pa. I.D. No. 63306
2315 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
(412) 281-8676
Counsel for the plaintiff

Dated: March 11, 2021